DELRAY BEACH AVIATION CORPORATION and Bert Boldt, Appellants,

v.

MOONEY AIRCRAFT, INC., Appellee.

No. 20878.

United States Court of Appeals
Fifth Circuit.

May 6, 1964.

Rehearing Denied June 5, 1964.

---

Preston H. Dial, Jr., Robert B. Thornton, San Antonio, Tex., for appellants.

Hal Rachal, Midland, Tex., Joseph F. Leonard, Jr., Kerrville, Tex., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and CHRISTENBERRY, District Judge.

JOHN R. BROWN, Circuit Judge.

The question in this case is whether the Florida Long Arm service of process statute reaches as far as Texas. The District Judge, in a suit brought on a Florida State Court default judgment, answered in the negative. Picking our way as best we can on this *Erie* trail, cf. United Services Life Ins. Co. v. Delaney, Paul Revere Life Ins. Co. v. First Nat'l Bank, 5 Cir., en banc, 1964, 328 F.2d 483 (concurring opinion), we conclude that as Florida construes its Act, the operations of defendant-appellee were within the reach of the statute. And consideration of these same factors demonstrates that for the limited federal due process inquiry, no constitutional obstacle exists. We therefore reverse.

The State Court suit was brought by a purchaser[1] against Mooney Aircraft,[2] the manufacturer of the Texas-built Mooney Mark 20A. Sought were damages for the total loss of the plane when it crashed in Florida allegedly due to faulty manufacture. Delray had purchased the plane from Metropolitan[3] in the regular course of Metropolitan's operations as the distributor for Mooney Aircraft in this particular area. Metropolitan had earlier acquired the plane from Mooney Aircraft. Utterly irrelevant to our problem is Mooney Aircraft's insistence—which we may credit arguendo—that this sale was made in Texas, where title passed, not in Florida. The significant fact is that it was sold to Metropolitan, as a distributor, for its use or resale within the geographical limits of the distribution area. Consequently, one of the some-time obstacles is not present here. We have a Florida suit asserting a cause of action at least coming into being in Florida and closely related to the very activities giving rise to the designation by Mooney Aircraft of a Florida representative—the sale of Mooney planes in Florida.[4]

The Florida arm is not only long. It is strong, and its sinews were strengthened by the legislative reflex to court decisions. In 1951 Florida enacted § 47.16, subsection (1), F.S.A.[5] This Act like others in Arkansas, Illinois, Maryland, Minnesota, Vermont, Washington, and

---

1. The purchaser was Plaintiff, Delray' Beach Aviation Corporation; also joined as a Plaintiff was Bert Boldt, the pilot, suing for personal injuries.

2. Mooney Aircraft, Inc. This Kansas corporation is to be distinguished from Mooney Sales Company, a Texas corporation.

3. Metropolitan Aircraft Corporation.

4. Thode, In Personam Jurisdiction; Article 2031b, the Texas "Long Arm" Jurisdiction Statute; And the Appearance to Challenge Jurisdiction in Texas and Elsewhere, 42 Texas L.Rev. 279, 303 (1964).

5. Fla.Stat. § 47.16(1), F.S.A., provides:
"(1) The acceptance by any person or persons, * * * who are residents of any other state or country, and all foreign corporations, * * * of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, shall be deemed equivalent to an appointment by such persons and foreign corporations of the secretary of state of the state as the agent of such persons or foreign corporations upon whom may be served all lawful process in any action, suit or proceeding against them * * * arising out of any transaction or operation connected with or incidental to such business or business venture, and the acceptance of such privilege shall be signification of the agreement of such persons and foreign corporations that any such process against them * * * shall be of the same legal force and validity as if served personally on such persons or foreign corporations. Service of such process shall be in accordance with and in the same manner as now provided for service of process upon nonresidents under the provision of § 47.30. Provided that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute."

Wisconsin [6] reflects a purpose to reach as far as the Federal Constitution permits. The indications are that when the Second Circuit found this statute inadequate to sustain an earlier Florida State Court judgment, Berkman v. Ann Lewis Shops, Inc., 2 Cir., 1957, 246 F.2d 44, affirming S.D.N.Y., 1956, 142 F.Supp. 417, Florida responded to the Court's suggestion that "this is not to say that a statute might not constitutionally be drawn which would make the presence in a state of a wholly-owned subsidiary of a foreign corporation sufficient basis to assert jurisdiction over the parent company." [7] See 142 F.Supp. 417, at 422. It did this [8] by adding Subsection (2) to § 47.16, note 5, *supra* so as to encompass distributors, jobbers, wholesalers, and brokers for foreign corporations.[9] And the muscles were beefed up by the legislative declaration of policy stated in emphatic terms.[10]

■■ Although the cases do speak in terms of the one invoking substituted service having the "burden of presenting

---

6. See Thode, supra, note 4, at 304.

 We are indebted to that article (id. at 307 nn. 172, 173) for correcting the typographical error perpetuated by the law reports so that "amendability" reads "amenability" in the extract from Lone Star Motor Import, Inc. v. Citroen Cars Corp., 5 Cir., 1961, 288 F.2d 69, 72–73. There, speaking of the purpose of the Texas Long Arm Statute, we said:

 "Indeed, it seems highly likely that, as is true for similar legislation in many other states * * * the Texas purpose was to exploit to the maximum the fullest permissible reach under federal constitutional restraints. It was also, as it has been for other states, a means of avoiding the troublesome difficulties of tying *amenability* of service of process to taxability of a foreign corporation, or denying it access to the courts and related problems of the regulation of the right to do business." (Footnotes omitted, emphasis supplied.)

 See also Stanga v. McCormick Shipping Corp., 5 Cir., 1959, 268 F.2d 544, 550; Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83, 86; Green v. Bluff Creek Oil Co., 5 Cir., 1961, 287 F.2d 66, 67 n. 1.

7. In Deere & Co. v. Watts, Fla.Dist.Ct. App., 1963, 148 So.2d 529, the Florida Court quoted, as we did above, from the District Court opinion in the Berkman case and stated with reference to the 1957 amendment:

 "The language of the district court decision, however, indicated that had Florida enacted a statute authorizing such substituted service, it would be constitutional.
 " * * *

 "In accordance with the language of the Berkman decision it is our opinion that the service of process upon the appellant, in conformity with our §§ 47.16 and 47.30 * * * met all the requirements of due process of law." 148 So.2d 529, at 531, 532.

8. Florida has responded to court decisions with legislation before. See Fla.Stat. § 768.01 as amended, Fla.Laws 1953, ch. 28280, § 1, F.S.A. The 1953 amendment was presumably a response to this Court's decision in Graham v. A. Lusi, Ltd., 5 Cir., 1953, 206 F.2d 223, see Emerson v. Holloway Concrete Prod. Co., 5 Cir., 1960, 282 F.2d 271, 278, 285 (dissenting opinion).

9. Fla.Stat. § 47.16(2), F.S.A.: "Any person, firm or corporation which through brokers, jobbers, wholesalers or distributors sells, consigns, or leases, by any means whatsoever, tangible or intangible personal property, to any person, firm or corporation in this state, shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business or business venture in this state." Florida Laws 1957, ch. 57–747, § 1.

10. "WHEREAS, persons, firms and corporations in other jurisdictions are directly or indirectly furnishing millions of dollars worth of tangible and intangible personal property to persons, firms and corporations in this state each year; and

 "WHEREAS, litigation in both tort and contract frequently arises out of the purchase, lease, consignment, use and consumption of such property each year; and

 "WHEREAS, the cost and expense of going to other jurisdictions, both national and international, frequently has the practical effect of denying all rights and remedies regarding such purchase, lease, consignment, use and consumption; and

 "WHEREAS, it is just and fair that such litigation be conducted in this state rather than in a foreign jurisdiction, NOW, THEREFORE,

 "Be It Enacted by the Legislature of the State of Florida:" Fla.Laws 1957, ch. 57–747.

a situation that clearly justifies its application," since the "statute must be strictly construed," Fawcett Publications, Inc. v. Rand, Fla.Dist.Ct.App., 1962, 144 So.2d 512, 514, the Florida decisions—many of them prior to the sweeping amendment of 1957—have given a very liberal application in actual practice to § 47.16.[11] And none represents a retreat from the legislative objective. The requirement that one invoking the provisions of § 47.16(2) "has the burden of presenting a situation that clearly justifies its application," 144 So.2d 512, 514, is no judicial contraction. It is primarily the prescription of a sound administrative practice. Florida Courts are rightly conscious that there are limits. They are aware that, as recently put by Judge Jones for this Court, "Hanson v. Denckla[12] * * * teaches that, although the door of non-resident jurisdiction has been opened wider by International Shoe and McGee, it has not been removed from its hinges." Dooly v. Payne, 5 Cir., 1964, 326 F.2d 941, 943. The result is that some party has the obligation of bringing forward the relevant information sufficient to satisfy the due-process and local statutory requirements. Florida puts it squarely on the one invoking the process.

Nor is any such restrictive approach to be found in the dual substantive standard set forth in Fawcett Publications, Inc. v. Rand, Fla.Dist.Ct.App., 1962, 144 So.2d 512, just discussed, *supra,* and other similar cases, Fawcett Publications, Inc. v. Brown, Fla.Dist.Ct.App., 1962, 146 So.2d 899; Jenkins v. Fawcett Publications, Inc., D.C.Fla., 1962, 204 F.Supp. 361. Giving substantive content to the procedural burden discussed above, the Court in the Rand case requires that the one invoking the process must demonstrate either "(1) that the foreign corporation has some degree of control over the personal property referred to in § 47.16(2), supra, in the hands of the 'brokers, jobbers, wholesalers or distributors' selling or distributing the personal property in this State or (2) that the foreign corporation has some degree of control over the 'brokers, jobbers, wholesalers or distributors' selling or distributing the personal property in this State." 144 So.2d 512, 514.

In the recent decision in Deere & Co. v. Watts, Fla.Dist.Ct.App., 1963, 148 So.2d 529, the same Court of Appeals deciding Rand sustained service on the non-resident parent by service on the local subsidiary. The action of the subsidiary in Florida was substantially that of a jobber or distributor, and element (2) of Rand was satisfied by evidence showing "the extent of the subsidiary's activities within" Florida and, more important for our situation, "the degree of control which the appellant [nonresident parent] was *capable of exercising* over the operations and policies of the subsidiary." (Emphasis added.) The result could not have been surprising since the

---

11. E. g., State ex rel. Weber v. Register, Fla., 1953, 67 So.2d 619 (out-of-state owner of orange grove subject to jurisdiction of Florida courts in suit to recover real estate commission since listing of grove for sale is "business venture" within meaning of § 47.16); State ex rel. Guardian Credit Indemnity Corp. v. Harrison, Fla., 1954, 74 So.2d 371 (foreign corporation engaged in the sale of "retail credit discount" warranties in Florida by means of brokers was engaged in a business venture within scope of § 47.16); Strasser Constr. Corp. v. Linn, Fla., 1957, 97 So.2d 458 (jurisdiction of breach of contract suit by contractor against individual nonresident owners of land who had entered into construction contract for building of apartment house upheld under § 47.16—suit was on Sec. of State); Continental Copper and Steel Industries, Inc. v. E. C. "Red" Cornelius, Inc., Fla.Dist.Ct.App., 1958, 104 So.2d 40 (out-of-state manufacturer of electrical cable subjected to jurisdiction of Florida Courts in breach of warranty suit by contractor).

Certainly the cases construing subsection (2) of § 47.16, note 9, supra, reveal no begrudging attitude which would otherwise thwart the legislative policy declaration.

12. 1958, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

Court "felt impelled to give full effect to the legislative intent apparent in § 47.-16(2)." 148 So.2d 529, 531.

 The evidence overwhelmingly demonstrates that Mooney Aircraft had the requisite control over Metropolitan, its distributor. There were two simultaneously executed agreements, the "Distribution and Sales Agreement" and the "Service Agreement." The "Distribution and Sales Agreement" appears to be the master agreement since in § II Par. 2, the distributor is required to "Maintain service facilities in accordance with the terms of the accompanying Service Agreement." The Agreements bound Mooney Aircraft to sell its airplanes to the distributor at wholesale prices, to supply advertising and promotional material and sales aids, to maintain a service department, to maintain a stock of repair parts and a staff of service representatives available to the distributor for personnel training and consultation, to train distributor servicemen at the Texas factory and furnish signs showing a distributor to be an "Official Mooney Service Center" when any of its servicemen had been certificated by Mooney Aircraft and finally, to refrain from appointing any other distributors within the assigned territory.[13]

The Agreements likewise imposed heavy obligations, both express and implied, on the Distributor. Many of these obligations were stated in quantitative or qualitative terms which necessarily implied appraisal of their sufficiency by Mooney Aircraft, Inc.[14]

The overriding purpose of the Agreements was to stimulate the sales and service of airplanes manufactured and sold by Mooney Aircraft. The distributor was required to "provide adequate sales facilities, maintain sales staff and cover intensively and consistently through sales solicitation, advertising and promotional activities, the distributor's territory." It was to be identified as a Mooney distributor by ownership of demonstrator aircraft and posting of adequate display signs. And sales were not limited to its own since the distributor was required to "solicit and appoint dealers and representatives within the assigned territory for the promotion of retail sales of new Mooney Aircraft." Virtually unlimited control was given to Mooney Aircraft over the distributor's performance since Mooney Aircraft could cancel for "breach of contract" by immediate written notice and without cause of any kind by thirty days' written notice prior to an anniversary date.

The evidence is also uncontradicted that this was no mere paper arrangement. A representative acting either for Mooney Aircraft, Inc. or its exclusive sales outlet, Mooney Sales Company, made frequent trips into the State of Florida for the purpose of service calls stimulating sales, and the like.[15] And

13. The territory was described as "the State of Florida, excluding the Counties of Escambia, Santa Rosa, Okaloosa, Walton, Holmes, Washington, Bay" and "in the State of Georgia: the southern counties bordered on the north by and including Miller, Mitchell, Coloquitt, Cook, Berrien, Atkinson, Ware, Brantley, Glynn."

14. In § III of the Service Agreement, the Distributor agreed to (1) " * * * send at least one qualified serviceman for training at the Mooney Factory Service School," (2) "maintain service facilities for all owners of" Mooney airplanes "including adequate equipment to permit proper testing and normal repair, and an adequate stock of repair parts as recommended by Mooney Aircraft Service Department as well as qualified technical personnel * * *," (3) "display prominently any signs or Certificates" showing servicemen "Certificated by Mooney Aircraft, Inc.," (4) "furnish free service to all aircraft sold by it in cases where the Mooney warranty is applicable," (5) "establish a schedule of charges for service * * * which shall become effective when approved by the Mooney Aircraft Service Department manager," (6) "respond promptly to all requests for service on Mooney aircraft," and (7) "observe carefully all CAA rules and regulations on servicing any Mooney aircraft."

15. The Distributor—Service Agreement was executed September 23, 1958. It was not terminated until after the Florida State Court suit. These Agreements governed the relations between Metropolitan and

Mooney Aircraft held out to the world—at least the flying world—that its representative in Florida was Metropolitan Aircraft Corporation. In the February 1959 issue of Flying, modestly described as "The World's Most Widely Read Aviation Magazine," there was a double spread ad sounding the praises of Mooney's airplanes and its sales and service distributors and representatives.[16]

■ Mooney Aircraft, engaged in the manufacture of airplanes in Texas, but aware that its commercial success depended on the intensive sale of its airplanes throughout the nation, purposefully sought to enter and compete in the Florida market. With a choice of doing it by direct employees in a company branch, or through a traditional sales and service distributor, it deliberately chose the latter. In so doing, it was careful to maintain its own image, reputation and prestige, through the means of broad and exacting supervisory control over the quality and type of its distributors' activities. Through this medium it was doing substantially everything which a branch could have done. Florida, as a matter of deliberate policy (see note 10, *supra*) sees no distinction between the two. Nor, through constitutional eyes, must there be any distinction where in fact the contacts are sufficient, as they are here.[17]

■■ Holding, as we do, that by virtue of its operations through Metropolitan, its distributor, § 47.16(1)(2), Mooney Aircraft was engaged in business activity within the State of Florida and therefore amenable to service of process, the question still remains whether the manner of service was proper. There is no question about actual notice. Mooney Aircraft was informed on at least four occasions, twice by the counsel for the State Court plaintiffs, and twice by Metropolitan, that the suit had been filed. Guided by its president-lawyer-witness, cf. Rachal v. Allen, 5 Cir., 1963, 321 F.2d 449, 451 (dissenting opinion), Mooney deliberately took the bold course of ignoring the Florida summons. Any lurking due process problems are therefore narrowly confined to the question of whether the Florida statutory structure reasonably assures that the nonresident will have fair notice and an opportunity for a fair defense. See Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230; National Equipment Rental, Limited v. Szukhent, 1964, 375 U.S. 311, 84 S.Ct. 411, 11 L. Ed.2d 354, 357.

The process was not served on the Florida Secretary of State. Rather, the serv-

---

Mooney Aircraft for the sale, distribution and service of airplanes in the prescribed territory. No contractual relationship was established between Metropolitan and Mooney Sales Company. Consequently, the exclusive Sales Agreement between Mooney Aircraft, Inc. and Mooney Sales Company dated October 31, 1958, stated to "be perpetual" but effectually cancelled when Mooney Aircraft and Mooney Sales merged in 1961 is of no significance. This is so even assuming, as contended, that the traveling representative Martin was an employee of Mooney Sales Company only, and not Mooney Aircraft. The sales and servicing of Mooney planes in this Florida-Georgia territory had been exclusively committed to Metropolitan by Mooney Aircraft. Additionally, the national advertising subsequent to October 31, 1958, see note 16, infra, treated Metropolitan as a sales and service distributor of Mooney Aircraft, Inc.

16. On the left hand page just above a tabulated list by states of the distributors, including Metropolitan, the advertisement stated: "We, distributors and dealers of Mooney Aircraft, invite you to see and fly the Mark 20 and Mark 20A * * * and we assure our many customers of fast, efficient factory-like maintenance service." On the right hand side was the Company's sales pitch bearing the name "Mooney Aircraft, Inc., Kerrville, Texas" in large type and ending with the plea, "See your Mooney distributor or dealer now."

Since it is uncontradicted that the copy for the advertisement was prepared by, and its publication arranged through, the public relations counsellor for Mooney Aircraft, it is irrelevant that all or a substantial part of the cost of the space may have been contributed by the respective distributors whose names were listed.

17. See Thode, supra note 4, at 297–310 and see especially 303–304.

142

ice was made on Metropolitan (through its vice-president) as the "resident agent, in the absence of the president, vice president, cashier, treasurer, secretary, general manager and director"[18] of Mooney Aircraft. As we understand Mooney Aircraft's contention, it is this. Although Metropolitan, the so-called resident agent, sent the process on so that Mooney Aircraft had direct, positive, written, official information as to the pendency of the suit and the purported service of process on it, Metropolitan was not a "resident agent" and therefore as a matter of technical Florida statutory requirement, the service was imperfect. This necessarily assumes that had the service been had upon the Secretary of State, it would have been technically sufficient. The additional claim is then made that since the statute does not expressly compel the "resident agent" to transmit the process to the foreign corporation, there is no assurance that it would be received, and hence the statute is constitutionally deficient.

The last two sentences of § 47.16(1) prescribe that the service of the process "shall be in accordance with and in the same manner as now provided for * * under the provision of § 47.30." The last adds a proviso "that if a foreign corporation has a resident agent in the state, service of process shall be had upon such resident agent as now provided by statute." This brings into play §§ 47.30[19] and 47.17.[20]

Guided, as we must be, by the Florida standard concerning the attributes of one having the status of an "agent" for service of process, we think that Metropolitan was "a resident agent" and that service of process "upon such resident agent" was permissible. The District Judge seemed to think that Metropolitan could not be acting for Mooney Aircraft since each was engaged in its own separate business within the State of Florida. If that means that factually Mooney Aircraft was carrying on business within this assigned territory in its own right independent of Metropolitan, there is no basis in fact for such a finding. F.R.Civ.P. 52(a). If it means to imply that one cannot be a resident agent if his own interests are being advanced while serving the so-called principal, we think it is erroneous in law. Indeed, any such reasoning would be a repudiation of § 47.16(1) and especially subsection (2). Under subsection (1), the acceptance by a nonresident "of the privilege * * * to operate, conduct, engage in, or carry on a business or business venture in the state" is deemed to be an appointment of the secretary of state as the resident agent. Under subsection (2), anyone who "sells, consigns, or leases, by any

18. This was the plain meaning of the abbreviations used in the sheriff's return.

19. "§ 47.30 Method of service upon nonresident.—Service of such process shall be made by * * * either leaving a copy of the process * * * in the hands of the secretary of state * * * or by mailing a copy * * * to the secretary of state and such service shall be sufficient service upon a defendant who has appointed the secretary of state as his agent for the service of such process; provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant, and the defendant's return receipt and the affidavit of the plaintiff, or his attorney, of compliance herewith are filed with the papers * * * or that such notice and copy are served upon the defendant, if found within the state, * * *. Proof of service of process on the secretary of state shall be by a copy of notice of said secretary accepting such process."

20. "§ 47.17 Service of process on private corporation.—Process against any corporation, domestic or foreign, may be served:
"(1) [on president, vice president]
"(2) [on cashier, treasurer, etc.]
"(3) [on director of the company]
"(4) Upon any officer or business agent, resident in the state.
"(5) If a foreign corporation shall have none of the foregoing officers or agents in this state, service may be made upon any agent transacting business for it in this state.
"(6) [section not applicable insurance companies]
"(7) The provisions of this section shall be cumulative to all existing laws."

means whatsoever" personal property "through brokers, jobbers, wholesalers, or distributors" shall be "conclusively presumed to be operating, conducting, engaging in or carrying on a business or business venture in this state."

If Florida constitutionally can, under certain circumstances, declare that one can be carrying on a business through a distributor, then it is incongruous to conclude, as the District Judge presumably did, that the actions of Metropolitan were not in furtherance of the interests of Mooney Aircraft.

The inescapable fact which courts ought to be able to recognize is that Mooney Aircraft and Metropolitan had, to a great extent, a mutual interest in the sale, service, and distribution of Mooney Airplanes. Paraphrasing a celebrated apothegm, what was good for Metropolitan was good for Mooney Aircraft, and vice versa.

 Although Metropolitan and Mooney Aircraft did not stand in the traditional relationship of principal and agent, their close economic business ties were sufficient to satisfy the Florida standard that there be a "legal or moral duty on the part of the [agent] to report and properly handle a summons served on him as agent of" the foreign corporation. Mason v. Mason Prod. Co., Fla., 1953, 67 So.2d 762, 763.

This principle is followed by numerous courts. In Fiat Motor Co. v. Alabama Imported Cars, Inc., 1961, 110 U.S.App. D.C. 252, 292 F.2d 745, 747, the Court held that the District of Columbia Code provision for service "on the agent of such corporation or person conducting its business" was broad enough to cover a distributor similar to Metropolitan since the distributor "occupies such a responsible representative status as to make it reasonably certain that he will turn over the process." That Court cited our earlier decision in Acme Eng'r, Inc. v. Foster Eng'r Co., 5 Cir., 1958, 254 F.2d 259. Of course this approach was recog-

nized in International Shoe where the Court stated that it "is enough that [the foreign corporation] has established such contacts with the state that the particular form of substituted service adopted * * * gives *reasonable assurance* that the notice will be actual." 326 U.S. 310, at 320, 66 S.Ct. 154, at 160, 90 L.Ed. 95, 161 A.L.R. 1057. (Emphasis supplied.)

 It would be difficult to conceive of a relationship imposing a greater duty, either legal or moral, on the part of Metropolitan to forward a court summons to Mooney Aircraft. The claim arose out of the failure of a Mooney airplane in flight. The business reputation, prestige and future sales of both Mooney Aircraft and its distributor, Metropolitan, made it important that this litigation be properly handled. With so much at stake for each *in the future sales of Mooney airplanes* in that wide area, there was every reason to suppose that Metropolitan would do exactly as it did—transmit the process immediately. Within the broad qualitative-quantitative standards imposed by the distributor sales and service agreement, Metropolitan would be aware that failure to give notice to Mooney Aircraft in time for it reasonably to protect its interests would subject the distributor to the likely cancellation of the contract and the termination of what must have been deemed to be a profitable business connection. As we said in Acme Eng'r, Inc. of a Texas "traveling salesman," Metropolitan here "occupies such a responsible representative status as to make it reasonably certain that [it] will turn over the process to his company." And there, as here, the fact that the representative "actually passed [the process] on" may be considered in determining that reasonable probability. 254 F.2d 259, 263. It is this strong compulsion, whether described as a moral or a legal duty, to transmit the process on to the nonresident which supplies what was held to be the missing compunction in Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446.[21]

21. We have here no accidental relation of a transcient automobilist and service of process upon the Secretary of State, a per- son wholly unrelated to the defendant, his business, or, indeed, his presence in the state.

And in assaying the federal constitutionality of the Florida Statute, we must certainly look at it in the light of Florida procedures which afford to a nonresident defendant a full and unconditional opportunity to contest jurisdiction over the person of the defendant to the bitter end. Rule 1.11(b), 1954, Florida Rules of Civil Procedure, 30 F.S.A., copied from F.R.Civ.P. 12, allows the defense of "* * * (2) lack of jurisdiction over the person * * * (4) insufficiency of process, (5) insufficiency of service of process * * *" to be made by motion.[22] The rule was adopted with the purpose of abolishing former distinctions between general and special appearances, see Greenburg v. Greenburg, Fla. Dist.Ct.App., 1958, 101 So.2d 608, and the Supreme Court in State of Florida ex rel. Eli Lilly and Co. v. Shields, Fla., 1955, 83 So.2d 271, has held that objection to the Court's jurisdiction over the person of the defendant is not waived or prejudiced by participation in the trial and defense after the objections are overruled.

That means that Mooney Aircraft, armed with full, correct copies of the State Court pleadings and process, with detailed specific information from Metropolitan concerning the pendency of the case and the right under Florida practice to enter a special appearance, had a full, unrestricted opportunity to have the Florida Court pass upon its own statute and the sufficiency of the facts to support either amenability or the method of service, with right of review to the United States Supreme Court thereafter as to any federal constitutional questions. Of course the presence of this sensible and fair procedure does not compel a nonresident to submit either for the determination of that issue or the trial of the merits of the case. But in no sense does the risk of standing one's ground on amenability to process carry with it a forfeiture of the right to present a defense. That Mooney Aircraft has lost that opportunity is the consequence of its own deliberative choice to take the bold course.

The result is that the Florida State Court judgment is entitled to full faith and credit, and the District Court should enter judgment thereon.

Reversed and remanded with directions.

---

22. See Thode, supra, note 4, at 283–284, grouping Florida with 22 other states using the motion practice.