Mrs. Laverne H. GRIFFIN, Plaintiff,

v.

AIR SOUTH, INC. and Beech Aircraft Corporation, Defendants.

Mrs. Iness ROBERTS, Plaintiff,

v.

AIR SOUTH, INC. and Beech Aircraft Corporation, Defendants.

Mrs. Louise B. GIBSON, Plaintiff,

v.

AIR SOUTH, INC. and Beech Aircraft Corporation, Defendants.

Mrs. Charlotte I. FULLER, Plaintiff,

v.

AIR SOUTH, INC. and Beech Aircraft Corporation, Defendants.

Mrs. Judy WAGNER, Plaintiff,

v.

BEECH AIRCRAFT CORPORATION, Defendant.

Mrs. Beulah L. SWAGGART, Plaintiff,

v.

AIR SOUTH, INC. and Beech Aircraft Corporation, Defendants.

Violet Sharp WINTERBOTTOM et al., Plaintiff,

v.

AIR SOUTH, INC. and Beech Aircraft Corporation, Defendants.

AIR SOUTH, INC. and William H. Evans, Plaintiffs,

v.

BEECH AIRCRAFT CORPORATION, Defendant.

Civ. A. Nos. 13559–13562, 13658, 13700, 13923 and 14063.

United States District Court, N. D. Georgia, Atlanta Division.

March 24, 1971.

Arnold & Cate, Atlanta, Ga., Pruitt & Ruhle, Anderson, S. C., Robert S. Perkins, Speiser, Shumate, Geoghan, Krause, Rheingold & Madole, Washington, D. C., Robert E. Browne, III, Means, Evins, Browne & Hamilton, Spartanburg, S. C., for Laverne H. Griffin, Iness Roberts, Louise B. Gibson and Charlotte I. Fuller.

Ross & Finch, Atlanta, Ga., for Judy Wagner.

Hurt, Hill & Richardson, Atlanta, Ga., for Beulah L. Swaggart.

Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., Kreindler & Kreindler, New York City, for Violet Sharp Winterbottom and others.

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Air South, Inc. and William H. Evans.

Smith, Cohen, Ringel, Kohler, Martin & Lowe, Edward E. Dorsey, Atlanta, Ga., for Beech Aircraft Corp.

## ORDER OF COURT

MOYE, District Judge.

The Court has before it the motions and supplemental motions of defendant Beech Aircraft Corporation ("Beech") for summary judgment as to its first, second, third, and fourth defenses. In addition Beech has moved to dismiss in No. 13923.

## I. STATEMENT OF THE FACTS

These cases all arose out of the crash of a Beech B–99 aircraft operated by Air South, Inc. ("Air South") near Monroe, Georgia, on July 6, 1969. Civil Action Nos. 13559, 13560, 13561, 13562, 13700 and 13923 are wrongful death actions naming both Air South and Beech as defendants; No. 13658 is a wrongful death action against Beech alone; and No. 14063 is a hull loss claim by Evans (owner) and Air South (lessee) against Beech.

Beech's motions for summary judgment are based upon lack of *in personam* jurisdiction, insufficiency of process and service thereof, and, improper venue.

Plaintiffs in all of these cases sought service of process on Beech by serving an officer of Southern Airways Company ("Southern") at the Atlanta Airport. In addition, plaintiffs in Nos. 13700, 13923 and 14063 sought service on Beech pursuant to the Georgia "long-arm" statute, Ga.Code Ann. § 24–113.1. Plaintiffs in Nos. 13700 and 14063 also sought service on Beech pursuant to the "Georgia Non-Resident Corporation Act", Ga.Code Ann. §§ 22–1507, 1508 and 1509. Finally, after Beech had filed its motion for summary judgment, plaintiffs in Nos. 13559, 13560, 13561, 13562 and 13658 also sought service on Beech pursuant to the "long-arm" statute, *supra*.

Defendant Beech is a Delaware corporation having its office and principal place of business in Wichita, Kansas. Beech is not qualified to do business in Georgia.

The B–99 aircraft is sold only by Beech itself, and is not sold through distributors.

Southern, although not a party to any suit here, is the sole distributor of Beech products, exclusive of the B–99, in Georgia and other southeastern states. Southern services all Beech products, including the B–99.

■ These are all diversity cases. Beech has implied that diversity is lacking because plaintiff Swaggart, in Civil Action No. 13700, is a citizen of Colorado and Beech is authorized to do business in Colorado. Beech is incorporated in Delaware and has its principal office and place of business in Kansas. Under 28 U.S.C. § 1332(c), diversity would be lacking only if plaintiff were from Delaware or Kansas. Such is not the case here, and diversity exists.

## II. JURISDICTIONAL QUESTION

There are two problems which confront the Court at the outset in its consideration of *in personam* jurisdiction: (1) whether the Georgia "long-arm" statute comports with the due process clause of the Fourteenth Amendment to the United States Constitution, and (2) whether *in personam* jurisdiction is properly acquired under that statute.

■ This Court, in Marival, Inc. v. Planes, Inc., 302 F.Supp. 201, at 205 (N.D.Ga.1969), noted that: "Our task in the instant case is made easier by the fact that, absent state cases on this subject, we hold the Georgia "long-arm" statute [Ga.Code Ann. § 24–113.1] to be coterminous with the due process clause." Nothing has intervened to change the Court's view, and we adhere to that holding.

The fountainhead for due process considerations in jurisdictional questions is the landmark case of International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). There

the Supreme Court abandoned the accretion of years embodied in the "implied consent" or "presence" tests running back to Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). The Supreme Court held in *International Shoe* that *in personam* jurisdiction is proper in a state court if the defendant has "certain minimum contacts with it [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S., at 316, 66 S.Ct., at 158 (citations omitted).

*International Shoe's* progeny have constantly expanded the concept of what will be held to constitute those "minimum contacts" necessary to subject a defendant to the forum court's jurisdiction. *See*, Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1955). Those cases supply the standards, but, of course, the Court must look to the facts of the cases before it to determine if the standards are met.

The precise question under consideration here, although in a different factual situation, was heard in *International Shoe, supra*. There the Court said:

> But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

326 U.S. 310, at 319, 66 S.Ct. 154, at 160.

In determining whether Beech has the "minimum contacts" with Georgia necessary to subject it to *in personam* juris-diction under the Georgia "long-arm" statute, it is necessary to articulate the precise position occupied by Beech in this litigation. Beech is a Delaware corporation having its principal place of business in Wichita, Kansas. With the exception of sales of the B–99 type aircraft involved in this case, Beech distributes its products in Georgia through Southern, its Contract Distributor. The Distributor Agreement between Beech and Southern are attached as exhibits to the affidavits of John A. Elliott, Secretary-Treasurer of Beech, Jesse M. Childress, Jr., President of Southern, and Gerald Ford, Assistant Comptroller of Southern, submitted in all cases in support of Beech's motion for summary judgment.

The Distributor Agreement, or its direct lineal forebears, has been subject to the close scrutiny of several courts to determine if Beech was "doing business" within the jurisdiction of those courts. The unanimous conclusion was that Beech, through its distributors, had been doing business in the forum states. Szantay v. Beech Aircraft Corp., 237 F. Supp. 393 (E.D.S.C.1965), aff'd, 349 F. 2d 60 (4th Cir. 1965); Dunn v. Beech Aircraft Corp., 276 F.Supp. 91 (E.D.Pa. 1967); Scalise v. Beech Aircraft Corp., 276 F.Supp. 58 (E.D.Pa.1967). While it is not alleged that this Court has before it the identical Distributor Agreements considered by those courts, we have read those cases and have read the Distributor Agreement with Southern, and the conclusion is inescapable that Beech has, while changing the wording of the agreement somewhat, done nothing to lessen the degree of control exercised over its distributors.

The Court does not feel it necessary to spell out in this opinion all of the incidents of control Beech exercises over signatories to the Distributor Agreement with Southern, but rather feels it sufficient to say that they are present here as they were in *Szantay, Scalise* and *Dunn*. *See*, the enumeration of these "contacts" and incidents in the Addenda to Plaintiff's Memorandum of

Law, filed December 18, 1970, in Civil Action No. 13559; Plaintiff's Brief, filed November 25, 1970, in Civil Action No. 13658, at pp. 1 and 2; Plaintiff's Brief, filed December 18, 1970, in Civil Action No. 13700, at pp. 13 and 14.

A case which is particularly in point here is Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., 332 F.2d 135 (5th Cir. 1964). In that case Mooney, a Texas aircraft manufacturer, was held to be within reach of the Florida "long-arm" statute, based on its contacts in Florida. Judge (now Chief Judge) Brown, writing for the Court, said:

> Mooney Aircraft, engaged in the manufacture of airplanes in Texas, but aware that its commercial success depended on the intensive sale of its airplanes throughout the nation, purposefully sought to enter and compete in the Florida market. With a choice of doing it by direct employees in a company branch, or through a traditional sales and service distributor, it deliberately chose the latter. In so doing, it was careful to maintain its own image, reputation and prestige, through the means of broad and exacting supervisory control over the quality and type of its distributors' activities. Through this medium it was doing substantially everything which a branch could have done. Florida, as a matter of deliberate policy sees no distinction between the two. Nor, through constitutional eyes, must there be any distinction where in fact the contacts are sufficient, as they are here.

332 F.2d, at 141 (citations omitted). All that is necessary in the case at bar to find the necessary contacts under *Mooney* is to substitute the word "Beech" for "Mooney", the word "Kansas" for "Texas", and the word "Georgia" for "Florida.

Therefore, the Court finds sufficient contacts to satisfy the constitutional imperatives, and moves on to consideration of the Georgia statutes.

The statute mainly relied upon by plaintiffs is the Georgia "long-arm" statute, Ga.Code Ann. § 24–113.1.[1] Paragraphs (a) and (b) of that statute were extant at the time of the crash, and the only question is whether they are applicable. Paragraph (c) is a 1970 amendment, and the Court must first consider if it should be applied retroactively before considering whether it applies in this case.

It is significant that the statute has been amended twice. A 1968 Amendment made the statute applicable to corporations, Ga.Code Ann. § 24–117. The 1970 Amendment (Ga.L.1970, p. 443, 444), which was approved March 20, 1970, added the present section (c).

Return on service in Civil Action Nos. 13559, 13560, 13561 and 13562 was accomplished before March 20, 1970, the effective date of section (c). Return on service in the rest of the cases was after March 20, 1970. The important date here, however, is the date of the crash, July 6, 1969.

Both the 1968 and the 1970 Amendments seem clearly to be evidence of the intent of the Georgia Legislature to expand the statute to the fullest extent possible. *Cf.*, Marival, Inc. v. Planes, Inc., *supra*. Additionally, it is clear that

---

1. 24–113.1. *Personal jurisdiction over nonresidents of state.*—A court of this State may exercise personal jurisdiction over any nonresident, or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use or possession enumerated in this section, in the same manner as if he were a resident of the State, if in person or through an agent, he:

  (a) Transacts any business within this State; or

  (b) Commits a tortious act or omission within this State, except as to a cause of action for defamation of character arising from the act; or

  (c) Commits a tortious injury in this State caused by an act or omission outside this State if the tort feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State * * *

the Legislature was deliberately moving from the old "doing business" concept to the broader concept embodied in "transacts any business." Scott v. Crescent Tool Co., 296 F.Supp. 147 (N.D.Ga. 1969). In what must be the authoritative interpretation of this statute, in the absence of construction by a Georgia appellate court, this Court, in *Marival, supra,* held it "coterminous with the due process clause." We see no reason to retrench from that position. Since we have found sufficient contacts and now find that the statute is broad enough to acquire service over Beech, we now look to the statute to see if jurisdiction of Beech was acquired thereunder.

█ This Court has previously considered whether Ga.Code Ann. § 24–113.-1(a) applies to tortious conduct, and concluded that it did not. Scott v. Crescent Tool Co., *supra.* We held there that such a construction of § 24–113.-1(a) would render § 24–113.1(b) redundant and unnecessary. There is no reason advanced why the Court should now rule differently, and we adhere to that holding.

█ In *Scott,* the Court went on to consider whether § 24–113.1(b) applied to negligent acts *outside* the state which resulted in an injury *inside* the state, and ultimately held that it did. While there have been no intervening decisions interpreting § 24–113.1(b) in such circumstances, the Georgia Legislature in 1970 enacted § 24–113.1(c), set out in the margin, *supra.* There can be no question but that § 24–113.1(c) would authorize the service of process here under consideration if it were held retroactive, and the Court considers that question separately, *infra.*

First we address our attention to the effect to be given our construction of § 24–113.1(b) by reason of the intervening amendment. It is obvious that the legislature had in its contemplation situations just like the one posed by the cas-

es for decision today when it enacted § 24–113.1(c). The question raised by the amendment is this: Did the Georgia legislature feel that § 24–113.1(b) did not cover out-of-state negligence causing an in-state injury, and because of that feeling enact § 24–113.1(c) to fill the "gap", or was it simply confirming in more explicit terms the correctness of this Court's reasoning in *Scott.* We choose the latter view, and hold that service upon Beech in this case was proper and *in personam* jurisdiction was obtained under § 24–113.1(b).

As stated above, the Court has no doubt that § 24–113.1(c) applies to Beech if it is held to apply retroactively. We further conclude that it should be applied retroactively, as set out below, and that service thereunder was proper.

In Hare v. United Airlines Corp., 295 F.Supp. 860 (N.D.Ga.1968), this Court considered the question of whether the 1968 amendment to § 24–117 (Ga.Laws, 1968, p. 1419), which specifically included corporations in the meaning of the term "non-resident", should be held retroactive. We considered Ga.Code Ann. § 102–104,[2] as well as Focht v. American Casualty Co., 103 Ga.App. 138, 118 S.E. 2d 737 (1961) (holding no retroactive application), and Pritchard v. Savannah St. & R. R. R. Co., 87 Ga. 294, 13 S.E. 493, 14 L.R.A. 721 (1891) (holding retroactive application). We accepted the test in *Pritchard* as stating the correct rule: "[L]aws curing defects in the remedy, or confirming rights already existing, or adding to the means of securing and enforcing the same, may be passed." 87 Ga. at 297, 13 S.E. at 494. Applying that test to § 24–113.1(c), we find that it does not change the right against a defendant. As we said in *Hare:* "Had a corporation been subject to the jurisdiction of the court prior to the amendment, it clearly could have been sued." 295 F.Supp., at 862. That is exactly the case here, and the amend-

---

2. Ga.Code Ann. § 102–104 states, in pertinent part: "Laws looking only to the remedy or mode of trial may apply to

\* \* \* rights \* \* \* accrued \* \* prior to their passage."

ment only adds "to the means of securing and enforcing" a preexisting right. The Court concludes, as we did in *Hare, supra,* that *Pritchard, supra,* is controlling and that Beech was properly served under § 24–113.1(c).

A contrary result is not required by Bauer International Corp. v. Cagles, 225 Ga. 684, 171 S.E.2d 314 (1969). *Bauer* held that the 1968 amendment to Ga. Code Ann. § 24–117, which included corporations within the meaning of "non-residents", did not apply to a factual situation arising before the amendment. In the case at bar the accident happened after the effective date of the 1968 amendment making the "long-arm" statute applicable to corporations. Thus the remedy, jurisdiction over the non-resident corporation, was available here, and the 1970 amendment merely made clear that a tortious act outside the state which resulted in an injury within the state created a cause of action. As stated above, the remedy is not new—it existed at the time of the accident; and the 1970 amendment is merely remedial.

Since Beech's motion and argument is based almost entirely upon the reasoning and authorities relied upon in O'Neal Steel, Inc. v. Smith, 120 Ga.App. 106, 169 S.E.2d 827 (1969), we address ourselves briefly to that case. *O'Neal* considered the question of whether the "long-arm" statute conferred jurisdiction over a nonresident corporation which had committed a negligent act in Alabama which resulted in injury to plaintiff in Georgia. The Georgia Court of Appeals considered the same cases considered by this Court in *Scott, supra,* and concluded that the "long-arm" statute did not apply—reaching a result contrary to that reached by this Court. Subsequently the Georgia Supreme Court decided Bauer International Corp. v. Cagles, Inc., *supra,* and, based on *Bauer,* remanded *O'Neal* for consideration in light of their opinion. The Court of Appeals then vacated their opinion, 121 Ga.App. 8, 172 S.E.2d 479 (1970), and entered a new opinion of reversal based on *Bauer* alone, that is, on the basis that the factual situation there involved arose prior to the 1968 amendment. Beech now urges the "reasoning" —not the holding—of the original *O'Neal* opinion upon this Court as the correct indication of how a Georgia Court would decide this question.

The same contention as made by Beech here was made in Hutson v. Sears, Roebuck and Co., Civil Action No. 12338. This Court, in an unpublished order filed March 30, 1970, held as follows:

> Third-party defendants in the instant action now urge this court to view the *O'Neal* decision as an indication of how the Georgia courts ultimately will rule upon the "tort within the state" provision of the Long-Arm statute, while Sears contends that the action taken by the Court of Appeals in vacating the entire opinion suggests that the court may intend to adopt a more liberal interpretation. In view of the foregoing it is evident that any prediction as to the future action of the Georgia courts is purely speculation. In any event we do not consider that a state court decision which has been vacated in its entirety is a sufficient indication of what the state courts consider the law to be to justify overruling this court's decision in Scott v. Crescent Tool, supra, and we decline to do so.

We again see no reason to retreat from our conclusion in *Scott,* and decline to do so. *Cf.,* Entron, Inc. v. Gen. Cablevision, 435 F.2d 995 (5th Cir. 1970).

Likewise, Hamilton v. Piper Aircraft Corp., 119 Ga.App. 361, 167 S.E.2d 228 (1969), does not require a different result. The Georgia Court of Appeals there merely rejected the line of cases which include *Delray Beach Aviation, supra,* and *Szantay, supra,* and relied on Southeastern Distributing Company v. Nordyke & Marmon Company, 159 Ga. 150, 125 S.E. 171 (1924). *Southeastern Distributing* is an old Georgia Supreme Court case which predates *International*

*Shoe, supra,* by 21 years. The Court considered no recent authority, and decided the case on "doing business" concepts, not on the present "transacts business" standard. There is nothing in *Hamilton* which persuades the Court to consider it as authority contrary to *Scott.*

■ A final consideration urged upon the Court is that of forum *non conveniens.* Beech, in addition to asserting that the only place where it would be amenable to this suit is in Kansas, further asserts that Kansas is the most convenient forum. That is not the case. Although Walton County, the site of the crash, is in the Middle District of Georgia, it is less than sixty miles from this courthouse. Air South and Southern both have their corporate records in Atlanta, and the material evidence and most witnesses are located here also. The only convenience found in Kansas is that of Beech to defend. Plaintiffs' choice of forum must be honored here.

In summary, the Court finds that service was proper under either Ga.Code Ann. § 24–113.1(b) or (c). In view of this holding, it is unnecessary for the Court to consider either the argument that defendant has waived its jurisdictional defenses, or whether service was accomplished under the "Georgia Non-Resident Corporation Act", Ga.Code Ann. §§ 22–1507, 1508, and 1509.

### DEFENDANT BEECH'S MOTION TO DISMISS IN CIVIL ACTION NO. 13923

■ Beech has moved that plaintiff Winterbottom's Counts II through VI be dismissed for failure to state a claim upon which relief can be granted.

The motion is denied as to Count II. That count is one for "great physical pain and mental anguish in contemplation of his death." Beech asserts that plaintiff has no right to recover under this count. It appears that the precise question presented by this count is a novel one: Does a decedent suffer a compensable agony in an airplane in a death plunge? There are cases cited from other jurisdictions allowing recovery for short periods of awareness of imminent death, but none are from Georgia, and none are more than analogous. However, the Court is not persuaded that "it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." 2A, Moore, Federal Practice (1968 Ed.), ¶ 12.08; Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Mizell v. North Broward Hospital District, 392 F.2d 580 (5th Cir. 1968). It may appear upon the trial of this case that no recovery is authorized, but the Court will not dismiss that count at this time.

Counts III and IV are wrongful death claims promised upon a breach of warranty theory. Counts V and VI are for recovery based on so-called "strict liability". Plaintiff, in her original Memorandum in Opposition, filed September 6, 1970, conceded that Counts III through VI should be dismissed in the present state of Georgia law, as interpreted in Horne v. Armstrong Products Corp., 416 F.2d 1329 (5th Cir. 1969), and Whitaker v. Harvell-Kilgore Corp., 418 F.2d 1010 (5th Cir. 1969). In her subsequent memorandum, filed December 16, 1970, plaintiff states that the concessions as to Counts III and IV were ill-advised and retracts her concession as to those counts.

Based on plaintiff's unretracted concession in her Memorandum filed September 8, 1970, Counts V and VI are dismissed. Horne v. Armstrong Products Corp., *supra*; Whitaker v. Harvell-Kilgore Corp., *supra.*

Counsel for plaintiff has requested a hearing on the questions raised by Counts III and IV because of their novelty in Georgia. Accordingly, the Court will hear argument at 11:00 A.M. on April 7, 1971.