**WELL SERVICES, LTD., Plaintiff,**

v.

**PYRAMID DERRICK & EQUIPMENT CORP., et al., Defendants.**

Civ. A. No. 77-H-1521.

United States District Court,
S. D. Texas,
Houston Division.

Oct. 26, 1981.

Arthur Stamm, Baker & Botts, Houston, Tex., for plaintiff.

William M. Jensen, Royston, Rayzor, Vickery & Williams, Houston, Tex., for defendants.

## ORDER

McDONALD, District Judge.

Pending before the Court is the motion of third-party defendant and cross-defendant Reddick Hydraulic Cylinder Company, Inc. ("Reddick") to dismiss the cross-action asserted against it by third-party defendant and cross-plaintiff, Industrial Air & Hydraulics, Inc. ("Industrial Air"). Reddick requests this Court to dismiss the cross-action, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground that this Court lacks jurisdiction over its person. Plaintiffs Pyramid Derrick & Equipment Corporation and Pre Corporation as well as third-party defendant and cross-plaintiff Industrial Air & Hydraulics Incorporated oppose this motion. A ruling on this motion has been delayed, allowing the parties to engage in discovery so as to provide the Court with a sufficient factual basis in order to consider the Motion to Dismiss. For the following reasons, the Court DENIES the Motion to Dismiss.

This is a products liability action in which the third-party plaintiff, Pyramid Derrick & Equipment Corp. and Pre Corp., has sued Reddick for contribution and indemnity on the allegations that Reddick placed into the stream of commerce a defective and unreasonably dangerous hydraulic cylinder which was negligently designed and manufactured, and that by so doing Reddick breached both implied and express warranties of merchantability. It has been alleged by the third-party plaintiff that it purchased a hydraulic cylinder from Industrial Air & Hydraulics, Inc., who in turn had purchased the cylinder from Reddick.

Reddick contends that it is beyond the reach of the Texas Long Arm Statute, Article 2031b, Tex.Rev.Civ.Stat.Ann., as limited by constitutional due process considerations. Reddick, a corporation organized under the laws of the state of Oregon, with its principal place of business in the state of Oregon argues that it is a foreign corporation which is not "doing business" in the state of Texas within the meaning of Article 2031b.

However, the affidavit and deposition testimony of Industrial Air's sales manager, Bob Curtis, and the affidavits of Richard Prestridge, an Industrial Air sales representative, clearly establish that Reddick was and is "doing business" in Texas within the purview of Section IV of Article 2031b. The deposition testimony reflects that Reddick has been and is a party to an exclusive distributorship contract with Industrial Air, a Texas resident. This contract requires performance by both companies in the state of Texas. The annual totals of all Reddick sales to Industrial, the vast majority of which involved Texas sales are as follows: 1975—40,346.00, 1976—36,557.00, 1977—48,605.00, 1978—39,221.00, 1979—141,292.00. Importantly, the particular hydraulic cylinders involved in this litigation were manufactured by Reddick and shipped directly to Pyramid Derrick in Houston, Texas. In his affidavit, Richard Prestridge asserts that Mr. Bruce Reddick, the president of Reddick, personally accompanied him on a sales

call to Pyramid Derrick & Equipment Company on March 24, 1971. Thereafter, on April 2, 1976, Prestridge received the Pyramid order for the hydraulic cylinders involved in this litigation. If the hydraulic cylinders at issue were in fact defective, as alleged, Reddick has committed a tort, at least in part, in the state of Texas by virtue of its conduct here in connection with the sale. *See Hoppenfeld v. Crook*, 498 S.W.2d 52 (Austin—1973, writ ref'd n.r.e.) and *Black v. Acme Markets, Inc.*, 564 F.2d 681, 685–686 (5th Cir. 1977).

The Court may consider and weigh affidavits in resolving a challenge to its jurisdiction. *See generally*, Wright & Miller, *Federal Practice & Procedure*: Civil § 1351. The affidavit of Mr. Reddick states in conclusory terms that Reddick does not do business in the state of Texas. To the contrary, the affidavits of Mr. Curtis and Mr. Prestridge and the deposition testimony of Mr. Curtis clearly establish a relationship between Reddick and Industrial Air dating from 1974 or 1975 including but not limited to the shipment of the hydraulic cylinders which are the subject of this litigation. This relationship is sufficient to constitute "doing business" in Texas within the meaning of article 2031b especially in view of the fact that Industrial Air's claim obviously consists of "causes of action arising out of such business done in this state," Article 2031b, Tex.Rev.Civ.Stat.Ann. § 3. Reddick is clearly within the "long arms" reach, if that reach is not blocked by constitutional due process.

■ The Fifth Circuit has inferred a "dual test" for determining whether a court may take jurisdiction without depriving a defendant of due process of law":

First, 'there must be some minimum contact with the state which results from an affirmative act of the defendant.' Secondly, 'it must be fair and reasonable to require the defendant to come into the state and defend the action.'

*Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494 (5th Cir. 1974). In applying this dual test, each case must be decided on its facts. *Southwest Offset, Inc. v. Hudco*

*Publishing Co.*, 622 F.2d 149 (5th Cir. 1980); *Product Promotions, Inc. v. Cousteau, supra* at 499.

The Supreme Court addressed the due process considerations of *in personam* jurisdiction in *World-wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World-wide*, the Court said:

"when a corporation" purposely avails itself of the privilege of conducting activities within the forum state, ". . . [cite omitted] it has clear notice that it is subject to suit there and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected cost on to customers, or, if the risks are too great, severing its connection with the state." And the court noted further, "the foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there."

444 U.S. at 297, 100 S.Ct. at 567.

With respect to the first component of the "dual test"—minimum contacts—the Fifth Circuit's decision in *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 (5th Cir. 1980) is instructive. There, the Fifth Circuit stated:

We hold that the nature and quality of these contacts—having as their purpose the establishment of the Louisiana based company as the exclusive distributorship for Sapag's production in North America—reveal the kind of purposeful activity which has been held to constitute sufficient minimum contacts. Sapag has purposefully availed itself of the privilege of conducting activities in Louisiana. We are inescapably drawn to the conclusion that the agreement entered into and the combined activities of Sapag show that it "transacted business" in Louisiana within the meaning of the Louisiana Long-arm Statute, and demonstrate sufficient minimum contacts with the State of Louisiana to justify the exercise of personal jurisdiction over Sapag under the due process

analysis. Sapag reasonably should have anticipated being hailed into court in Louisiana.

625 F.2d at 644. The Court therefore, must determine whether Reddick has such minimum contacts with Texas that the maintenance of the lawsuit here would not offend traditional notions of fair play and substantial justice. *International Shoe Company v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Here, Reddick's factory sales representative, Clyde Snell, came to Texas in 1975, after initiating contact by mail, to directly solicit business from Industrial Air. Clyde Snell and later Bruce Reddick, personally brought Reddick catalogs and sales literature to Industrial Air in Texas. Subsequently, Reddick's proposal of a distributorship contract was accepted by Industrial Air in Texas. The agreement, therefore, was "finalized" in Texas. In *Standard Fittings, supra* at 461, n. 21 the Fifth Circuit noted that the finalization of an agreement in the forum state may be a "contact superior in quality to the actual contacts" between the foreign defendant and the forum state. The Reddick/Industrial Air agreement resulted in continuing and substantial sales of Reddick products to Industrial Air in Texas. It created an immediate exclusive distributorship. In fact, Industrial Air remains Reddick's exclusive distributor in Texas today.

The president of Reddick has visited Industrial Air, in Texas, on at least two occasions to hold sales meetings, provide sales and technical training to Industrial Air personnel and accompany them on sales calls to present and prospective customers. One such sales call resulted in the transaction made the basis of this cross-action. Reddick personnel have also visited Texas for customer service purposes. Furthermore, as part of its involvement in Industrial Air's sales efforts, Reddick engages in extensive mail and telephone communications with Texas regarding technical requirements, specifications, prices, etc. Finally, Reddick sends sales literature, technical drawings, and other material to Texas on a regular basis. Reddick ships substantial amounts of its product into Texas; most of these shipments are direct to the ultimate customer. Reddick also extends credit to Industrial Air, in Texas, by means of its credit sales terms.

Accordingly, it is the opinion of this Court that the facts established in the Curtis and Prestridge affidavits, demonstrate that Reddick's "contacts" with Texas were and are sufficiently extensive to render it amenable to Texas jurisdiction.

With respect to the second component of the "dual test", i. e. fairness and reasonableness of requiring the defendant to defend itself in the forum state, this Court concludes that *in personam* jurisdiction over Reddick must be upheld. The Curtis and Prestridge affidavits have shown that Reddick initiated continuous, extensive, purposeful, and intentional contacts with the state of Texas. In short, Reddick purposely availed itself of the privilege of conducting business in Texas. *See World-wide Volkswagon, supra. See also Oswalt v. Scripto, Inc.,* 616 F.2d 191 (5th Cir. 1980) where the Fifth Circuit recognized that the establishment of a distribution system involves the kind of purposeful availing of the privilege of conducting business in a given jurisdiction and imposes the concomitant obligation of submission to the courts of that state. Reddick knew full well that the hydraulic cylinders, at issue in this litigation, would be purchased by customers in Texas. Reddick sold the cylinders to its Texas distributor for simultaneous resale to the very Texas customer whom Reddick's president had helped solicit. Reddick then shipped the cylinders directly to its Texas customer. Based on these facts, this Court is of the opinion that Reddick should have reasonably anticipated being hailed into court in Texas.

Although the mast collapse accident which is the subject of this litigation occurred in Trinidad, this Court is not divested of jurisdiction. In *Williams v. Brasea, Inc.,* 497 F.2d 67 (5th Cir. 1974), the Court affirmed a decision of this Court, (per J. Seals), holding that "where the contacts

themselves are significant, the place of injury is immaterial." 320 F.Supp. 658 (S.D. Tex.1970). Further, even though the cylinders in question were shipped "F.O.B. Roseburg, Oregon," such a technical passage of title does not have jurisdictional significance. *See Delray Beach Aviation Corp. v. Mooney Aircraft, Inc.*, 332 F.2d 135 (5th Cir. 1964); *Oswalt v. Scripto, Inc.*, 616 F.2d 191, 197 n. 8 (5th Cir. 1980); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630 n. 13 (5th Cir. 1980).

Thus, it is clear that Reddick has had sufficient "minimum contacts" with the state of Texas to subject it to jurisdiction under the long arm statute. Assertion of jurisdiction under that statute would not deny Reddick of due process of law for it is clear that it has purposefully conducted business in Texas and that it should be required to face the concomitant responsibility of subjecting itself to the jurisdiction of this Court.

Accordingly, it is hereby ORDERED, ADJUDGED, and DECREED that the Motion to Dismiss, of third-party defendant and cross-defendant Reddick Hydraulic Cylinder Company, Inc., is DENIED.